JESSE CITRON, Respondent, v. W. C. FIELDS, Appellant.

Loyd Wright and Charles E. Millikan for Appellant.

Frank S. Hutton and Albert H. Ford for Respondent.

WARMER, J., *pro tem.*—Plaintiff and respondent herein is a practicing physician in the state of California, and has his office in Hemet, Riverside County, a town of about 3,000 population. Defendant and appellant herein is an actor.

Some time prior to June 12, 1936, appellant was temporarily living at Saboba Hot Springs, a few miles distant from Hemet, and was a patient of respondent. Respondent was paid for his services up to that date.

On June 12, 1936, respondent was called to attend appellant and found him to be a very sick man, suffering from bronchial pneumonia. Appellant was afflicted with polyneuritis and Paget's disease and was in the habit of drinking whiskey day and night, consuming from one to two quarts each twenty-four hours. He was a man fifty-six years of age and in a very serious condition, due primarily to the pneumonia. Respondent advised hospitalization at once, to which appellant agreed, upon the express condition that re-

spondent would go with him to the hospital and remain with him as long as he remained there, and if consultants were called, respondent was to remain in charge of the case.

Appellant was taken to the Riverside Community Hospital in an ambulance and respondent arranged for a consultant who was a specialist in the diseases of the chest. Later, he arranged for a further consultant or specialist in the treatment of pneumonia. All agreed that the appellant had a very slight chance of recovery from pneumonia alone at his age, and less chance because of his drinking habits, his affliction with polyneuritis and Paget's disease.

Respondent testified that appellant left the hospital cured of the pneumonia July 5, 1936. That he left cured is disputed by rather convincing evidence.

The respondent began practicing his profession at Hemet, California, in 1931. Immediately before that time he had practiced in Beverly Hills, California, for a period of twelve years, specializing in obstetrics. After moving to Hemet, California, his license to practice medicine and surgery was revoked by the State Medical Board in October, 1932, and such revocation was vacated in February, 1934, on certain terms and conditions. He has been practicing his profession since that date at Hemet. During the early part of his practice in Hemet, a large percentage of his patients came from places outside of the vicinity of Hemet, but during the latter part, most of his patients came from Hemet and vicinity.

During the time respondent was in attendance upon the appellant at the Riverside Community Hospital, he occupied a room immediately adjoining the room occupied by the appellant. His board and room were paid for by appellant. During said time he made one or two trips a week from the hospital to his home at Hemet for the purpose of securing changes of clothes, and made a trip to Arrowhead Hot Springs to determine if it would be a satisfactory place to take appellant when he was able to leave the hospital.

Respondent had another patient at the Riverside Community Hospital during said time under his personal care, an obstetrical case. This patient was admitted to the hospital on June 21, 1936, and left on July 4, 1936.

During the early part of the time that respondent was in attendance upon appellant at the hospital, aside from the

consultations hereinbefore mentioned, he made more or less frequent trips to the room occupied by the appellant in the discharge of his duties as a physician, sometimes in answer to a call from the nurse or patient, and on a few occasions, as early as 6 or 7 o'clock in the morning.

There is considerable in the record concerning the respondent's treatment of and attendance upon appellant. Appellant went from the Riverside Community Hospital to a sanitarium in Los Angeles County for care and treatment, where he remained for a considerable time.

A doctor called by the appellant as an expert witness, who was familiar with the customs and practice of physicians and surgeons in the community of Hemet and Riverside County in fixing their charges, testified in response to a hypothetical question that the reasonable value of the services performed in the case at bar was between $1,000 and $2,500.

Respondent brought this action for the sum of $12,000, alleging it to be the reasonable value of the services rendered. After trial, judgment was rendered by the court for the sum prayed for, to wit, $12,000.

Defendant appealed, and specifies among other things, error in the admission or rejection of evidence and that the evidence is insufficient to support the findings and judgment.

First we will consider the admission of certain expert testimony intended to prove the reasonable value of said services.

The testimony on the point here under discussion is that some time about the middle of May, 1936, respondent had a conversation with appellant at appellant's apartment at Saboba Hot Springs, in which the appellant told respondent: " 'They are trying to cut me off from my income.' . . . Q. You will please state what was said by Mr. Fields concerning his income to you at that time. A. He stated, 'They are trying to cut me off from my contract which I am getting $6,000 a week.' I said, 'Are you still getting it?' He said, 'Yes, I have been getting it ever since I left the studio. They are trying to cut me off. That was why they are trying to send this fellow out here, to find if I can recover, so they can cut me off.' I said, 'Well, Bill, when the doctor comes, we will see whether he has to report it. He probably will make a report, and then you can tell.' And subsequent to that examination, and after that examination, I understood that on June 1st he was taken off of his income for a certain

period of time until he would show whether he was going to be able to return to the studio or not. . . . I said, 'Well, you have other income; you won't miss it,'—after I found out that he was taken off. I said, 'You have some stocks and bonds, haven't you?' He said, 'No, I don't own a piece of real estate, or any stocks or bonds. I have got $700,000 in banks all through the country, and I have got to live off that while I haven't got this income.' "

We have quoted the above testimony as being all of the evidence offered by respondent relative to the income of appellant. His income of $6,000 a week was a drawing account that was terminated on June 1, 1936. The record does not disclose whether the weekly payment was ever restored to appellant. It does not disclose when the payment of $6,000 per week began. It was further shown by the appellant's testimony that he was under a contract with a studio to make three pictures at the rate of $100,000 a picture, and that the $6,000 per week was to be applied upon the payment of the same. His net annual income for the year 1935 was $57,687.51 and for the year 1936 it was $82,238.93, as shown by federal income tax returns.

It would therefore appear from the above testimony that it sufficiently shows that the appellant had the ability to pay for the reasonable value of the services rendered.

Respondent called as an expert witness a physician from another county, to wit, Santa Monica, in Los Angeles County, who stated he was familiar with the various methods used by physicians and surgeons in determining the just and fair charges for services rendered. He had never practiced in Riverside County and knew nothing of the practice or customs of physicians there. Respondent's counsel asked this witness: "Will you please state to the court the various factors entering into the determination of a just and fair charge?" To which the witness replied: "The two main factors are the difficulty and the amount of work represented in the case; and second, the ability of the patient to pay. The ability of the patient to pay depends primarily upon his net income, and as to whether or not he has dependents. The Court: When you speak of the difficulty encountered, do you consider the responsibility of the case? A. Very definitely. Q. (By Mr. Hutton): Doctor, assume that the patient is a man fifty-six years of age suffering from Paget's disease, and a man who has been in the habit of using up

to two quarts of whiskey a day, was taken with bronchial pneumonia, the patient being a prominent motion picture star with a reputed income of $6,000 per week and with an accumulated surplus in the neighborhood of $700,000, the doctor in attendance being in constant attendance upon the patient day and night from June 12, 1936, to July 5, 1936, and the patient having made a complete recovery from the pneumonia, what would in your opinion be a fair and reasonable charge for the services rendered by the physician?'' The question was objected to as incompetent, irrelevant, and immaterial; that it assumed facts not in the evidence; that no proper foundation was laid for it; and that the portion of the question that asked the doctor as to the basis on which a charge is made is incompetent, irrelevant, and immaterial, and calls for the conclusion of the witness upon a matter not in issue. The objection was overruled after argument by counsel. The witness testified: ''A. It is my opinion that the charge should be somewhere between five or ten per cent of the net income. Q. That is, the annual net income? A. Yes, sir.'' The witness said he was not familiar with medical practice in the so-called Hemet Valley or Riverside County and had never practiced there, and that he was not familiar with the customs and practices of physicians and surgeons in that community in the matter of fixing the reasonable value of services rendered.

Testimony tending to show a patient's ability to pay is admissible. (*Zumwalt* v. *Schwarz,* 112 Cal. App. 734 [297 Pac. 608].) ■ The value of professional services rendered by physicians is not a subject of general knowledge or within the scope of judicial notice. Proper proof as to the value of a physician's services requires evidence of those familiar as experts with such work in a particular locality (*In re Watzek's Estate,* 211 Wis. 50 [247 N. W. 330]; 21 R. C. L., p. 415, sec. 57.) ■ A physician is entitled to recover the ordinary and reasonable charge usually made for such services as he has rendered by members of the same profession of similar standing. (48 Corpus Juris, p. 1166, sec. 188.) There is a difference between ability to pay and an annual net income. However, annual net income may be in such an amount that, when related to the amount claimed, proof thereof would establish the ability to pay the claim. Usually, annual net income is evidence only of ability to pay, and therefore is one element to be properly considered in

the matter of determining what is the reasonable value of services performed. Fixing the value of services must be in the light of other elements than ability to pay, such as professional standing, capacity, and reputation of the person performing the services. In other words, his capabilities as measured by all of the elements that go into the demand for his personal services must be taken into consideration, as well as the difficulties of the problem presented and the amount of time necessarily occupied in the consideration thereof, etc.

■ As can readily be seen, one who has just been licensed to practice could not have established, within a community, public opinion or demand for his services that would justify a charge equivalent to a charge that would be made by a Mayo, although he might in a given instance prescribe the same treatment and direct the same care of the patient. Nor could a surgeon who was performing his first operation be considered to have demonstrated his capacity to justify a fee therefor in an amount equal to one of the outstanding surgeons of the world, although the results of such operation might be entirely satisfactory.

Furthermore, when a doctor possesses a rare gift in the matter of professional accomplishments and the demand for his time and services becomes very great, he is entitled to a greater compensation than as though such were not the fact. ■ All of the elements that go into fixing the reasonable value of services must be considered by an expert in expressing an opinion relative to the reasonable value of the professional services performed. Respondent was a general practitioner, with no special training or experience proved in treating pneumonia.

The hypothetical question we are considering assumes that appellant's income was $6,000 a week. While it appears that at one time he received that salary it was discontinued on June 1, 1936. There is no showing as to how long that sum had been paid appellant and nothing to indicate that it was revived. There was nothing either in the question or the evidence introduced up to that stage of the trial to indicate the net income of appellant. The question left out of consideration the important matters of the training, skill, experience, and professional standing of respondent. ■ The hypothetical question further assumed that the appellant was

a prominent motion picture star, without any evidence to support it. The vocation of the appellant is not an element in the fixing of a reasonable charge against him. The reasonable charge would be the same whether he was a motion picture star, a banker, or a rancher. It therefore appears that the objection should have been sustained.

The witness, having no knowledge of the customs and practice of the profession in fixing the reasonable value of services in Hemet and Riverside County, the community where the services were performed and where the respondent practiced, did not properly qualify as an expert witness to express an opinion thereon. (*In re Watzek's Estate, supra; Scanlon* v. *Anderson,* 49 R. I. 470 [144 Atl. 146].) Therefore, the objection to his testimony as an expert should have been sustained.

In the case of *Merchants Collection Agency* v. *Gopcevic,* 23 Cal. App. 216 [137 Pac. 609], the trial court said:

"The court adopted the view that the services were performed for appellant but it rejected the theory of an express promise to pay ten dollars an hour or two hundred and forty dollars a day. Of course, any conscientious judge would require the most convincing evidence of such contract before he would allow an enormous charge like that. Nor is it likely that he would hold $6,960 to be a reasonable charge for the services, even of a physician, for twenty-nine days."

Under the circumstances before us, it would appear that the learned trial judge must have given great probative value to the evidence of such witness in fixing as the reasonable value of the services of the respondent herein the sum of $12,000, for the period of time from June 12th to July 5th, or twenty-three days, or over $500 per day, and the admission thereof constituted prejudicial error.

The appellant sought to show by the examination of the respondent what his earnings were for the three years immediately preceding 1936 (being the years immediately preceding the one in which the services were rendered which give rise to the present action). This was objected to as incompetent, irrelevant, and immaterial. The objection was sustained. Objections were also sustained to questions seeking to elicit from respondent his customary charges for calls and services to patients. Counsel have cited no case in this state that determines this precise question and we have found

none. However, it may be said that one of the elements in determining the proper amount to be charged for the reasonable value of services rendered by a physician is his standing in his profession in the community. In *Davis* v. *Webber*, 66 Ark. 190 [49 S. W. 822, 74 Am. St. Rep. 81, 45 L. R. A. 196], it is stated that:

"The professional standing of the attorney, the amount of his professional business, and the nature and importance of the controversy in which the services were rendered, are all to be considered."

In *Phelps* v. *Hunt*, 40 Conn. 97, at 100, the court said:

"The value of professional services may depend, very considerably, upon the character and standing of him who performs them . . . "

(See 2 R. C. L. p. 1059, sec. 145.) In *Sills* v. *Cochems*, 36 Colo. 524 [85 Pac. 1007], the court said:

"But one question is presented for determination in this case: Is testimony tending to show that plaintiff was busily engaged in the practice of his profession admissible in an action brought by a physician to recover judgment for the value of professional services rendered, where the price to be charged for such services was not agreed upon?

"It is said that 'when an attorney sues upon a *quantum meruit* for professional services, his professional standing is a proper subject of inquiry as affecting the value of his services. And the amount of his professional business may be inquired into, as tending to show his professional standing.' Weeks on Attorneys at Law, 681; *Phelps* v. *Hunt*, 40 Conn. 97. Counsel has called our attention to no case, and we know of none, wherein it is held that a different rule should obtain in determining the value of a physician's services. The same reasoning which prompts the doctrine as to attorneys seems to warrant its application to physicians. The value of professional services may depend very considerably upon the character and standing of him who performs them. In the first place, there are diversities of gifts. The period of time passed in the profession, the experience acquired, degree of skill, and the faculty of using professional knowledge make great differences in individuals. The services of some are worth more than the services of others, because they will command more. Should a question arise as to the value of services, in an action brought by a physician to recover fees, where the nature of the services performed makes the

possession of certain qualifications to constitute an important element in the value of those services, as in this case where the plaintiff was called because of his peculiar skill as a diagnostician, evidence of professional standing is clearly admissible and is entitled to consideration.

"The fact that plaintiff was extremely busy tends to show his professional standing, and tends to show, in connection with other testimony concerning the length of time he had practiced medicine in that community, his experience, which gave him the requisite knowledge and ability to properly diagnose and prescribe the necessary medicines for diseased persons. If constant practice in the art of his profession renders a practitioner more capable than he otherwise would be, the extent of such a practice is a matter which may be properly inquired into for the purpose of determining the value of the services rendered."

The professional standing of the respondent was one of the elements properly to be considered in determining the reasonable value of the services rendered. The earnings of the respondent and his customary charges were also proper subjects of inquiry to aid in determining his professional standing and the reasonable value of the services rendered. We think the testimony as to the earnings of the respondent and his customary charges during a reasonable time prior to the rendering of the services should have been admitted. The sustaining of the objection was prejudicial error.

The appellant argues that there is no evidence to sustain the finding that $12,000 was the reasonable value of the services for the period between June 12, 1936, and July 5, 1936.

The rule is well settled that "In considering the testimony it should be remembered that the construction to be given to it must be that which will support the judgment of the court, if reasonable conclusions based thereon so warrant, and that any conflict in the testimony must be resolved against the appellant." (*Holder Lumber Co.* v. *Scarborough*, 28 Cal. App. 152 [151 Pac. 674].)

Applying this rule, we must look to the record to ascertain if there is any substantial evidence to sustain the judgment, and if so the appellant must fail on this point. The only evidence on this question in the record, other than that which we have considered, is found in the testimony of respondent in rebuttal, as follows: "Q. (By Mr. Hutton,

respondent's counsel) : Doctor, I asked you a question as to what bills you rendered to Mr. Fields for your services, and you stated to me $12,000. A. I did. Q. Was that the reasonable charge for the services you rendered to Mr. Fields in this case? A. Much less than the services are worth. Q. Less than the reasonable value? A. Yes, sir.'' It further appears from the testimony of the respondent, during the course of his direct examination, that his counsel asked him: ''Will you please state in money what the reasonable value, in your opinion, was for the services that you rendered to Mr. Fields? A. One twelfth of his annual income.'' A person who renders services is competent to testify as to their value. (*Rosenow* v. *Wiener,* 11 Cal. App. 294 [104 Pac. 839] ; *Merchants Collection Agency* v. *Gopcevic, supra.*) However, if the question meant the value of the services to Mr. Fields, it was improper, as the measure of the value of services is not the value to the appellant but the reasonable value of the services in the community where they were rendered, by the person who rendered them. (48 Corpus Juris, p. 1171; 21 R. C. L., p. 415, sec. 57.)

An examination of the above-quoted testimony of the respondent on the question of reasonable value of services shows that even in the mind of the respondent he was considering that the value of his services was so related to the annual net income of the appellant as to form one whole, incapable of separation. As he stated, ''one-twelfth of the annual income,'' and when pressed for an answer in dollars, he replied in effect that the bill for $12,000 was much less than his services were worth. And further, when his counsel asked him, ''Less than the reasonable value?'' he answered ''Yes.'' Does such testimony, standing alone, constitute substantial evidence of the reasonable value of the services?

In *Herbert* v. *Lankershim,* 9 Cal. (2d) 409, at 471 [71 Pac. (2d) 220], the Supreme Court said:

''There must be more than a conflict of mere words to constitute a conflict of evidence. The contrary evidence must be of a substantial character, such as reasonably supports the judgment as applied to the peculiar facts of the case. The rule announced in *Morton* v. *Mooney et al.,* 97 Mont. 1 [33 Pac. (2d) 262], correctly states the rule which has been approved by this court in a number of our decisions. It is thus stated:

" 'While the jurors are the sole judges of the facts, the question as to whether or not there is substantial evidence in support of the plaintiff's case is always a question of law for the court (*Grant* v. *Chicago etc. Ry. Co.,* 78 Mont. 97 [252 Pac. 382], and in determining this question "the credulity of courts is not to be deemed commensurate with the facility and vehemence with which a witness swears. 'It is a wild conceit that any court of justice is bound by mere swearing. It is swearing creditably that is to conclude the judgment.' '' '

"The rule in cases such as the one before us is that the court must view the transaction with the 'most scrutinizing jealousy'. This means, of course, any court in which the issue may be raised.''

It is clear from the record that respondent went into the trial court with the fixed idea that appellant's annual net income was very large and that one-twelfth of this income would be more than $12,000. He started to try his case on that theory. In his own testimony and that of his expert witness he based the reasonable value of his services solely on a percentage of the annual net income of appellant. When he realized that this annual net income for 1936 was only about $82,238.93, which would make his fee about $6,853.25, at the most, he then changed his theory and testified that the reasonable value of his services was more than $12,000.

Of course, under ordinary circumstances, this would be some evidence to support the judgment. However, a study of the record does not convince us that this should be classed as an ordinary case. Respondent stands impeached by his own testimony and the evidence furnished by him. He testified that for his treatment of appellant at Saboba he charged at the rate of $20 an hour for day visits and $30 for night visits. This is contradicted by the bills he rendered and which were paid. He first testified that the reasonable value of his services was one-twelfth of appellant's annual net income. Translated into dollars and cents, this is testimony that his services were reasonably worth about $6,853.25. Without excuse or explanation, he then testified that the same services were reasonably worth more than $12,000. In view of the unreliability of this witness, we must regard much of what he said as "mere swearing". (*Herbert* v. *Lankershim, supra*) which cannot be regarded as substantial evidence supporting the rather remarkable judgment of $12,000

to a physician whose past history in his profession is not without serious blemish and who was protected from any cross-examination on his usual charges and his actual earnings in his profession.

We regard these errors of refusing reasonable cross-examination of respondent on the financial returns from his practice and his usual charges as most serious, in view of the very large judgment given him which must shock the conscience until supported by more substantial evidence than now appears in the record.

The judgment is reversed.

Barnard, P. J., and Marks, J., concurred.