[Civ. No. 14872. First Dist., Div. Two. Aug. 13, 1952.]

ANTHONY VENTIMIGLIA, a Minor, etc., et al., Respondents, v. ELMER L. HODGEN, Appellant.

Schofield, Hanson & Sholars and Wendell Davis for Appellant.

James F. Boccardo and David S. Lull for Respondents.

GOODELL, J.—In this action, tried without a jury, respondent Anthony Ventimiglia, a boy of 9, was awarded $15,000 for personal injuries, and his mother was awarded

$390 for his medical and nursing care and treatment. A new trial was denied and this appeal was taken.

On Sunday, February 15, 1948, about 7 p. m. a Plymouth automobile owned and driven by John Ventimiglia, and a Mercury automobile owned and driven by appellant Hodgen, collided at the intersection of West San Carlos Street and Bird Avenue in San Jose. Anthony was riding in the front seat of the Plymouth with his brother John, who was then 18, while Leonard, another brother, aged 11, rode in the back seat. Appellant and his wife live in Canada and were in San Jose visiting Mr. and Mrs. Angus MacInnis. Mrs. Mac-Innis is a sister of Mrs. Hodgen. The two couples had driven out that afternoon to call on friends and were returning. Mr. MacInnis was in the front seat beside appellant and Mrs. MacInnis was in the back seat on Mrs. Hodgen's right.

San Carlos Street is a through highway, 40 feet wide, with arterial stop signs directed to traffic entering and crossing it. It runs in a general easterly and westerly direction. Bird Avenue is 40 feet wide and runs in a general northerly and southerly direction. The evening was clear, visibility good, and the streets were dry; it was dark and the headlights of both cars were on. The intersection is within a 25-mile zone.

Just before the collision appellant's Mercury was traveling westerly on San Carlos, about to make a left turn into Bird Avenue and proceed southerly thereon, and the Plymouth was traveling easterly on San Carlos. A DeSoto car driven by Harold Stern and headed northerly on Bird Avenue had stopped at the intersection and was awaiting an opening to cross; it was about 8 feet out from the easterly curb of Bird.

Appellant's Mercury was pretty well into its left turn when the Plymouth, coming from the west, hit it on its right side toward its rear, shoving it against the left front fender of the Stern DeSoto. The impact was within the southwest quadrant of the intersection. A 16-foot skid mark made by the Plymouth led into the point of impact.

Anthony was seriously injured and Mrs. MacInnis also was injured.

Anthony, through his mother as guardian ad litem, sued for his injuries; in a second count his mother sued for medical and nursing expenses for the boy's care, and in a third count John Ventimiglia sued for damage to his Plymouth. To each count the defendant pleaded contributory negligence, assumption of risk and unavoidable accident. Defendant with

his answer cross-complained against John for damage to his Mercury.

The court found that defendant was negligent and that as a proximate result the collision occurred between his car and that in which Anthony was a guest. It found that neither Anthony nor his mother was guilty of contributory negligence and that neither had assumed any risk. It also found that John was negligent and that his negligence "also proximately contributed to the happening of the accident, and to the damage to his automobile," and accordingly denied him any recovery and concluded that defendant Hodgen "have judgment against plaintiff John Ventimiglia as to that cause of action." Appellant was denied a recovery on his cross-complaint against John because of his own negligence.

The three occupants of the Plymouth—John, its driver, and Anthony and Leonard his guests—and the four occupants of Hodgen's Mercury all testified. Stern, the driver of the DeSoto stopped at the corner, who "saw the whole thing," also testified (for the defense) and the testimony of these eight witnesses presents many conflicts as might be expected in a case of this kind.

Appellant at once concedes that there are conflicts in the evidence, but contends that they are merely *in words;* that underlying the testimony of John Ventimiglia "were motives of guilt and self-interest" and that the case presents "a situation where the court could apply the principles laid down in the case of *Herbert* v. *Lankershim,* 9 Cal.2d 409 [71 P.2d 220] . . ." There (at p. 472) it was said that in determining whether there is substantial evidence to support the plaintiff's case " 'the credulity of courts is not to be deemed commensurate with the facility and vehemence with which a witness swears.' "

Again, appellant presents the question "Is John's evidence worthy of belief?" Thus this court is asked to take over the functions of the trial court in weighing and evaluating the testimony, and in passing upon the credibility of the witnesses.

Four cases are cited by appellant which cite approvingly *Herbert* v. *Lankershim,* but none of them convinces us that the rule which appellant invokes has any bearing on the present controversy.

The first is *DeYoung* v. *DeYoung,* *(Cal.App.) 159 P.2d

*A hearing was granted by the Supreme Court on July 26, 1945. The final opinion of that court is reported in 27 Cal.2d 521 [165 P.2d 467].

102, 105, an action by a wife for separate maintenance, wherein the trial court denied her any relief. The husband had earlier obtained a divorce in Mexico. The district court of appeal reversed the judgment, holding *inter alia* that the husband had "perpetrated a gross fraud upon his wife and upon the court in Juarez by not furnishing her address to counsel and the court there," and that his testimony to the contrary created no conflict since it consisted of "mere words" (citing *Herbert* v. *Lankershim*). The Supreme Court granted a hearing and affirmed the judgment, saying (27 Cal.2d 521, 525 [165 P.2d 467]): "Defendant herein testified that he gave plaintiff's name and address to the attorney who handled the Mexican divorce proceeding; and the Chihuahua decree, a duly authenticated copy of which was introduced, recites that publication of summons had been made and that 'all the legal requirements had been complied with.' This evidence was ample to support the trial court's finding that 'due and proper notice' had been given [citations]." After further discussion the court said (p. 526): ". . . the probative value of the evidence was a matter for the determination of the trial court. The power of an appellate court ends with respect to the facts when it determines that there is substantial evidence which supports the trial court's findings. (*Viner* v. *Untrecht,* 26 Cal.2d [261], 267 [158 P.2d 3]; *Stromerson* v. *Averill,* 22 Cal.2d 808 [141 P.2d 732]; *Watson* v. *Poore,* 18 Cal. 2d 302 [115 P.2d 478].)"

In the second case, namely, *Gosselin* v. *Hawkins,* 95 Cal. App.2d 857, 860 [214 P.2d 110, 112], the Lankershim case is cited only in support of the familiar rule (for which scores of authorities might have been cited) that there must be substantial evidence to support the jury's finding. In that case it was held that there was such evidence.

The third case is *In re Guardianship of Sturges,* 30 Cal. App.2d 477, 496, 497 [86 P.2d 905, 914], an appeal from an order removing a guardian. In reversing, the court held that there was no substantial evidence to support the order, citing Lankershim.

The fourth case is *Citron* v. *Fields,* 30 Cal.App.2d 51, 62, 63 [85 P.2d 534, 540], an action for a physician's fee on a case of bronchial pneumonia. The judgment for $12,000 was reversed as exorbitant, the court holding (on the authority

of Lankershim) that much of the testimony on the plaintiff's side was "mere swearing."

 This court in *Ferrari* v. *Mambretti*, 58 Cal.App.2d 318, 322, 323 [136 P.2d 326], had occasion to consider the Lankershim case, for it was there invoked, as it is here, in support of the claim that certain testimony was inherently incredible. This court said: "We do not understand that the Lankershim case made a new rule in appeals involving the question of the sufficiency of the evidence. Where a miscarriage of justice is apparent the evidence may be scrutinized more carefully, and when the evidence relates to declarations or oral admissions of a party, it will be received 'with caution' as required by section 2061, subdivision 4 of the Code of Civil Procedure. It is true that the court quoted with approval from an early English case holding that in proceedings of this kind the evidence of the oral admissions must be 'satisfactory' and 'convincing.' The use of these words has been frequently criticized in our decisions, and we do not understand that, in the Lankershim case, the Supreme Court was departing from the rule that the weight of the evidence, and particularly the credibility of the witnesses, were each a matter for the trial court or jury." A petition for hearing was denied.

We see no reason to change or modify our statement in that case, in any respect. It is applicable to the present situation. This record presents no miscarriage of justice. The trial court on conflicting testimony found that the drivers of both cars were negligent.

 Finally, while on the subject of *Herbert* v. *Lankershim*, there is the case of *Taylor* v. *Wright*, 69 Cal.App.2d 371, 387 [159 P.2d 980], where *inter alia* the court in denying a rehearing said: "The briefs of appellants and this petition cite the frequently relied upon but seldom followed case of *Herbert* v. *Lankershim* . . . and ask us to disregard conflicts in the evidence. This we cannot and should not do." A hearing was denied by the Supreme Court.

Without detailing all the testimony in this record of about 200 pages, it is sufficient to say that there was a conflict as to the Plymouth's speed. John Ventimiglia testified that it was 25 to 30 miles per hour and that he slowed down to a virtual stop just before the impact; he told the police officer he was going 30. Appellant, on the other hand, said it was 50; Stern, sitting in his car at the corner, put it at 45 and said that John did not slow down at all. Appellant testified

that he gave the arm signal for a left turn 50 to 100 feet before reaching the intersection; Stern testified that appellant gave the left-turn signal; John said he saw no arm signal, which, under the authorities, creates a conflict. Appellant testified that when he commenced to turn, John's car was 150 feet away; Stern said it was about 250 feet away; John testified that he was between 30 and 40 feet away when the Mercury commenced to turn and Leonard placed the distance at about 40 feet. Appellant testified that before starting to turn he stopped or paused to let two cars traveling easterly ahead of the Plymouth clear the crossing; Stern also testified as to the two other cars; John testified that there were no cars ahead of him. Stern testified that appellant made a gradual turn, "a very perfect left-hand turn," but later said "He could cut a close corner." John testified that appellant was traveling at about 15 miles when he made the turn and that he "turned rather sharply" before coming to the center of the intersection. Further, that in the impact the Mercury "pushed me over a couple of feet, dragged with me." Photographs in evidence show that the grille on the Plymouth's radiator was twisted to the right, out of line, and the right front bumper flattened against the tire. One of the principal questions in the case was whether appellant, who testified the Plymouth was traveling at 50 while he in the Mercury was practically stopped, was warranted in starting to turn in the path of the oncoming Plymouth. (See Veh. Code, § 551.)

The trial judge summed up the testimony in the following opinion which he filed:

"In this action the physical facts as presented to the Court indicate negligent conduct on the part of each of the drivers of the automobiles involved. The damage done to each car and their respective positions, as shown by the photographs offered, together with the testimony of the police officers all tend to show that driver Hodgen attempted to 'cut a close corner,' as the witness Stern put it, in turning left at the intersection and that driver Ventimiglia was either driving at too great a rate of speed under the circumstances, and was thus unable to properly control his car, or was inattentive in his approach to the intersection until too late to control his car. Section 551 of the Vehicle Code places a heavy responsibility on the driver of the car intending to make the left turn to judge when the approaching vehicle is 'so close thereto as to constitute an immediate hazard.'

The testimony of the witness Stern, while apparently very honest and disinterested, does not clearly coincide with the physical facts and the officer's testimony. . . .''

The only question on this appeal is whether there is any substantial evidence to support the finding that appellant was negligent and that his negligence was one of the proximate causes of the collision. That there is such evidence is, in our opinion, beyond question. The negligence of John Ventimiglia was likewise found by the court and is not now in controversy. Such negligence, however, was not imputable to Anthony, a guest in John's car (*Edwards* v. *Freeman*, 34 Cal.2d 589 [212 P.2d 883]) and no such contention is made herein.

There is no conflict between the court's written opinion and the findings. They are perfectly consistent.

The judgment is affirmed.

Nourse, P. J., and Jones, J. pro tem., concurred.