[Crim. No. 3432. Second Dist., Div. One. July 25, 1941.]

THE PEOPLE, Respondent, v. CHARLES M. WILSON et al., Appellants.

Charles M. Wilson and Joseph Bauer, *in pro. per.*, for Appellants.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

DORAN, Acting P. J.—On an information charging the joint commission of seven offenses, appellants were found guilty of burglary with explosives as charged in three counts of the information, of burglary in the second degree on a fourth count, and appellant Bauer alone was found guilty of second degree burglary on a fifth count. Both appellants were found by the jury to have been armed at the time of the commission of one of the offenses charged. Appellants both admitted prior felony convictions as charged. A motion by appellants for a new trial was denied. Each appellant, *in*

*propria persona,* prosecutes a separate appeal from the judgments and orders.

 The evidence on which appellants were convicted reveals the following. On the morning of April 29, 1940, safes at the Arden Farms Dairy in Los. Angeles were found "burned" open and their condition plainly indicated that they had been rifled. On Monday, May 13, 1940, the manager of the J. C. Penney Store in Westwood found that the store had been robbed over the weekend. Early on the morning of May 31, 1940, the manager of an Atlantic & Pacific Tea Company store on West Pico Street in Los Angeles discovered that during the night a hole had been sawed in the roof of the store, a hole had been burned through the safe and the safe had been opened, a certain amount of silver removed therefrom; and bottles of liquor had also been taken from the store. On June 9, 1940, the plant of the Home Oxygen Company, within the metropolitan area of Los Angeles, was burglarized and oxygen cylinders were removed therefrom. At about four in the morning of June 10, 1940, the night watchman in a theatre in Leimert Park, a Los Angeles suburb, was held up and forced into a lavatory of the theatre, the theatre safe was then cut open and the premises robbed. The watchman made his escape through a fire door in the lavatory and phoned the police. When the police arrived at the scene appellant Bauer was observed walking across the boulevard. Bauer was then 100 or 150 feet from the front of the theatre. In explanation of his presence there he stated that he had been to see a girl friend, but was unable to give the girl's name or her address, except that it was "somewhere" on Leimert Boulevard. Bauer was discovered to be wet with perspiration, and a search revealed certain articles on his person which were identified as having been taken from the theatre. The safe in the theatre had been cut open, the manager's office was littered and disordered and a tank was found in the manager's office, which was later identified as an oxygen tank belonging to the Home Oxygen Company. In the weeds outside the theatre there was found a metal suitcase containing tools, including a tank sufficiently identified as containing acetylene gas; and a .32 caliber Colt automatic pistol was also found in the weeds near the fence by the theatre. The night watchman stated that he had been held up with a .45 caliber gun and at the trial identified appellant Wilson as the man who had held him up.

Appellant Wilson was apprehended in San Diego on the evening of June 13, 1940. After Wilson's arrest there was found in his automobile, from which he had removed the license plates, a suitcase containing a number of articles, a torch, tubing, brace and bit, flashlight, gloves, pliers, hatchet, rope, saw and saw filers. Also found in the car was a suit of clothes. This suit and the suit worn by appellant Bauer at the time of his arrest were both found to be impregnated with the same kind of debris and steel slag. This debris and slag was identified as being similar to that found in front of the safe at the Leimert theatre. Wilson's quarters in San Diego were located by the police. In a garage at Huntington Park, to which Wilson had a key, as hereinafter noted, there was found a .45 caliber gun and shells, and in Wilson's apartment in San Diego .45 caliber shells were found. In the same garage in Huntington Park were found oxygen tanks belonging to the Home Oxygen Co. At the time of his arrest appellant Bauer had on his person a ring of keys; one of these keys fitted the padlock on this garage. Bauer, under examination by Wilson at the trial, stated he got the padlock in question from Wilson. Among Wilson's effects there was found a key which fitted the same padlock. Found in Wilson's car was a small disc with holes. This disc fitted a respirator found in the garage with the oxygen tanks.

In the safe at the Arden Dairy there had been a bag of large size old U. S. currency and a bag of odd U. S. coins. Both were found in Bauer's apartment. There was a large quantity of stamps, both in sheets and rolls, taken from the Arden Farms Dairy. Similar stamps were found in Bauer's apartment. A partial roll of three cent stamps was found in Wilson's apartment, identified as similar to those in the Arden safe. Wilson failed to give a very satisfactory explanation of why he should be in possession of such a large quantity of stamps in a roll. He stated he had bought them at the post office for $15.00, a roll of 500 three cent stamps. Wilson claimed to be a construction contractor but did not explain why, if at all, he would need such a quantity of stamps. One of the police officers testified that Wilson had told him that the stamps had been bought from a "kid in San Pedro" for a dollar. Seven bottles of liquor, identified by handwriting on the labels as having come from the rifled Atlantic & Pacific Tea Company store, were found in Bauer's apartment; and

an empty liquor bottle, identified in like fashion, was found in Wilson's apartment. Wilson was unable to explain the presence of the bottle. Articles identified as having been taken from the Penney store were found in Bauer's apartment.

Appellants made a motion for separate trials which was denied. Appellant Wilson appears to have become dissatisfied with his counsel during the course of the trial. Counsel for Wilson had appeared in the first instance merely for the purpose of having the bail reduced, but had remained to defend Wilson, apparently because Wilson had not obtained other counsel. Requests were made by counsel during the trial for permission to withdraw and Wilson requested that he be allowed to dismiss his counsel and defend in person. The court at first denied these requests but later granted counsel's request to withdraw, and Wilson defended in person during the balance of the trial.

 Both appellants contend the evidence is insufficient to support the verdicts. In this respect, it is to be noted that appellant Wilson argues for a reversal of the judgments upon this ground, while appellant Bauer argues for reversal of the judgments as to burglary; but merely contends for modification of the judgments as to burglary with explosives on the ground that there was insufficient evidence as to use of explosives. Both appellants assign as error the denial of separate trials and the acceptance and rejection of certain evidence, and contend that both the court and prosecutor committed prejudicial misconduct during the trial. In addition, appellant Wilson assigns as error the refusal of the trial court to permit him to defend in person and without counsel; and also contends that counsel for his codefendant was guilty of misconduct prejudicial to Wilson.

There is no merit to any of appellants' contentions as to the insufficiency of the evidence. The evidence did not merely include possession by appellants of the fruits of the burglaries, but included as well failure on the part of both appellants to account for such possession upon a theory inconsistent with guilt of the offenses charged, acts and conduct of appellants strongly tending to show their guilt, and, in addition, direct and circumstantial evidence closely connecting both appellants with the commission of one of the burglaries charged, together with a set of highly incriminating circumstances surrounding both appellants with general relation to the offenses in question. Moreover, the presence of both an

oxygen cylinder and a tank of acetylene at the scene of the Leimert Park theatre burglary, together with other evidence of possession or access to supplies of oxygen, evidence of the tools possessed by appellants or found at the scene of the crime, and the manner in which safes at the scenes of the other burglaries had been opened, furnished ample basis for an inference that the safes in question had been opened through the use of explosives. (Section 464, Penal Code.) The entire chain of circumstances thus created was sufficient to warrant the conclusion that appellants were guilty of the crimes charged by the counts here in question. (*People* v. *Taylor,* 4 Cal. App. (2d) 214 [40 Pac. (2d) 870]. And see *People* v. *McGilver,* 67 Cal. 55 [7 Pac. 49].) The evidence also warrants an inference that appellants were armed at the time of the commission of the burglary at the Leimert Park theatre. It should be stated that the question of the credibility of the witnesses was one solely for the decision of the jury.

Appellant Bauer has seized upon an apparent typographical error or inadvertent mistake in respondent's brief as the basis for a contention that the burglary of the Home Oxygen Company was not proven. The address given by respondent in its brief as that of the Home Oxygen Company appears from the record to be that of the witness who testified as to the burglary. Bauer contends for a variance between the charge and the proof as to the burglary in question. Respondent's reference to the record immediately reveals that no such variance exists, that the burglary was proven in accordance with the charge and that the inconsistency with respect to the address of the plant burglarized exists solely in respondent's brief.

The trial court did not err in refusing to grant appellants separate trials. The matter was one resting solely in the sound discretion of the court. Appellants were charged with the joint commission of a series of offenses and it does not appear that the court abused its discretion in refusing to grant appellants' motion in this respect. (*People* v. *Eudy,* 12 Cal. (2d) 41, 45 [82 Pac. (2d) 359], and cases there cited.)

The matter of granting appellant Wilson permission to dismiss his counsel and defend in person was likewise one addressed to the sound discretion of the trial court. Rather than a show of abuse of discretion in this regard, the record

reveals a solicitude on the part of the court for the cause of appellant's defense.

■ It is argued that evidence introduced in an effort to connect appellants with the gun found in the weeds at the Leimert Park theatre should have been excluded as proof of another offense than those charged, since the evidence thus introduced went to show that the gun had been stolen. But connection of appellants with the gun in question would also tend to connect them with the burglary of the theatre; and ''the rule is too firmly established that evidence tending to connect a defendant with the commission of a crime charged against him is not to be excluded on the ground that it tends to connect him with an offense not included in the charge, to require the citation of a long list of authorities." (*People* v. *Perry*, 195 Cal. 623, 636 [234 Pac. 890].)

■ Appellants complain that the court erred in permitting the prosecution to ask leading questions of witnesses on direct examination, principally with relation to the identification of a large number of exhibits. On direct examination leading questions may be asked in the discretion of the court when it appears that the interests of justice so require. (*People* v. *Sparks*, 44 Cal. App. (2d) 748 [112 Pac. (2d) 974] ; sec. 2046, Code of Civil Procedure.) Under the circumstances of the instant case there was obviously no abuse of discretion in permitting the leading questions of which appellants complain.

The assignments of other errors and of misconduct on the part of the court, prosecutor and counsel are so lacking in substance and merit as to be unworthy of detailed discussion.

For the foregoing reasons the judgments and orders denying motions for new trial are affirmed.

White, J., and Desmond, J., *pro tem.*, concurred.

A petition for a rehearing was denied August 5, 1941, and appellant Bauer's petition for a hearing by the Supreme Court was denied August 21, 1941.