[Crim. No. 5558.    Second Dist., Div. Three.    Aug. 8, 1956.]

THE PEOPLE, Respondent, v. MARGARET MODELL, Appellant.

Grant B. Cooper for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, P. J.— Defendant Modell was accused of the crime of manslaughter in violation of section 192 of the Penal Code,[1] in that while engaged in the driving of a vehicle she caused the death of Elizabeth Deutz as the proximate result of the manner in which she was driving. By separate count she was charged with violation of section 501, Vehicle Code, a felony, in that she drove an automobile while under the influence of

---

[1] "§ 192. Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds: . . . 3. In the driving of a vehicle —(a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence. (b) In the commission of an unlawful act, not amounting to felony, without gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence."

intoxicating liquor, thus proximately causing bodily injury to Elizabeth Deutz. She was found guilty of manslaughter and of "violation of Section 502 Vehicle Code, (driving while under the influence of intoxicating liquor) a misdemeanor, a lesser offense and necessarily included in violation of Section 501 Vehicle Code, a felony, as charged in Count 2 of the information." She made a motion for a new trial which was denied and she appeals from the judgment and order.

Upon this appeal it is contended that the court erred in admitting into evidence testimony concerning the result of an experiment in the testing of blood for alcoholic content and in unduly restricting her counsel's *voir dire* examination of prospective jurors.

The evidence, insofar as it is relevant to the appeal, was as follows: An automobile driven by defendant collided with a car driven by Mary Elizabeth Deutz at an intersection in Los Angeles at about 6:30 a.m. on March 7, 1955. Mrs. Deutz was killed. There was some evidence that defendant was speeding and had entered the intersection against a red light, but in view of the conviction of violation of Vehicle Code, section 502, this evidence may be disregarded. The crucial question was whether, at the time of the collision, defendant was driving while under the influence of intoxicating liquor.

Defendant was taken to the Hollywood Receiving Hospital after the accident, and was questioned there by Officer Wisehart at about 7:15-7:30 a.m. He testified that he noted a moderate odor of alcohol on her breath. He asked her whether she had been drinking, and she said that she had had two drinks at a restaurant prior to 10:30 p.m. the night before, and had had three drinks of vodka at her place of business where she had spent the rest of the night working by herself. (Defendant admitted on the stand that she had imbibed the vodka, but denied that she had drunk liquor at the restaurant.) Wisehart asked her to blow up a balloon for an intoximeter test, but she refused. In response to Wisehart's questions about the accident, she said she didn't know what had happened. Wisehart told her that she appeared to be intoxicated, and she said that if Wisehart stated she was drunk, she was drunk. Officer Wisehart then accompanied defendant in an ambulance to General Hospital and told her on the way that she was under arrest for manslaughter. Sergeant Kilpatrick saw defendant at the General Hospital prison ward, where she was being treated by Dr. R. E. Holtzhauer for injuries she suffered in the accident. She told Kilpatrick about the

vodka, and said she had left her place of business about 4 a.m. to mail a letter and go home, but remembered nothing more until after the accident. She said she had declined to take the intoximeter test only because the officers would not call her husband. She agreed to submit to a blood test to determine the alcoholic content of her blood.

Dr. Holtzhauer examined and treated defendant at General Hospital. She formed a qualified opinion that defendant was intoxicated, the qualification being that the symptoms of intoxication could have been due to injuries received in the crash. Dr. Holtzhauer took a sample of defendant's blood at about 10:30 a.m. She wiped defendant's arm with a sponge containing either alcohol or tincture of zephiran, an antiseptic alcoholic solution, inserted the needle of a syringe into defendant's left arm, and withdrew about 30 cc's of blood from the vein into the syringe, putting the blood from the syringe into a small vial which she handed to Sergeant Kilpatrick, who gave it to Lambert, a police chemist, for analysis. There was no evidence and no inquiry as to the size of the needle used in extracting the blood. Dr. Holtzhauer did not recall how much time elapsed between the time defendant's arm was wiped and the time the needle was inserted, although she testified the rate of evaporation of both alcohol and tincture of zephiran is very rapid. Neither did she recall whether she put the wet cotton sponge over the needle while withdrawing it. This was the first occasion on which Dr. Holtzhauer had withdrawn blood from a patient's arm for the purpose of testing its alcoholic content. Sergeant Kilpatrick also observed the taking of the blood sample. He did not see any antiseptic used on defendant's arm, and testified that defendant's arm was dry when the needle was inserted. Geraldine Lambert, the police chemist, made a chemical analysis of the blood sample taken from defendant. Her analysis showed .155 per cent blood alcohol. In her opinion, a person with .155 per cent blood alcohol would be under the influence of intoxicating liquor. It was likewise her opinion that if a person's blood which was removed at 10:30 a. m. contained .155 per cent blood alcohol, it would have contained .21 per cent blood alcohol at 6:30 a. m. the same morning, assuming that the person had had nothing alcoholic to drink since 6:30 a.m. She also testified that if alcohol is used to bathe the vicinity of a vein, and a needle is immediately inserted, the alcoholic content of the blood removed from the vein would be increased on chemical analysis. The sample would not show a true blood alcohol reading

because the needle would have picked up a small amount of alcohol from the skin. The witness concluded that when alcohol is used to wipe the arm before a needle is inserted, the test is "void" unless sufficient time elapses prior to the insertion of the needle for the alcohol on the skin to evaporate.

Dr. Richard O. Myers, an expert witness called by defendant, likewise testified as to the effect of bathing the skin in alcohol in making the test. He added that if the doctor placed the wet sponge over the needle when withdrawing the needle as well as bathing the affected area, the sample would be even more inaccurate. He stated that the percentage of error would depend upon the quantity of alcohol on the arm, how much got into the needle, the amount on the sponge, the quantity left on the needle, and the amount that got into the sample, and that any minute quantity might have an appreciable effect on the test.

During his cross-examination of Dr. Myers, the deputy district attorney offered to submit to an experiment to determine the effect of bathing the skin with alcohol in making a blood test. Defendant's counsel stated that he had no objection to the experiment. During recess, Dr. Myers saturated the deputy's left arm with alcohol applied by a wet sponge and inserted a needle into the vein before the alcohol evaporated, took a sample of blood, and withdrew the needle enveloped in the wet sponge. He then put alcohol on the deputy's right arm, and waited until the alcohol had visibly evaporated. The needle was then inserted and removed without the use of the wet sponge. Both samples were, pursuant to stipulation, delivered to Geraldine Lambert for analysis subject to any objections defendant might have when the results were offered into evidence. Dr. Myers used a 22 gauge needle, and stated that the size of the needle would affect the results of an experiment.

On the following day, Geraldine Lambert testified that she had tested the two blood samples taken from the deputy. On being asked her finding as to the percentage of alcohol contained in the samples, defendant's counsel objected to the question on the ground that "proper foundation has not been laid in this," "On the ground that there is no proper showing that the test, that the conditions were the same in the test. . . . As to the condition to which the blood was drawn in the instant case." The objection was overruled. The witness then testified that the percentage of blood alcohol in the sample taken from the deputy's left arm was .016 and that the per-

centage in the sample taken from his right arm was .006. In her opinion, if the blood taken from defendant which showed .155 per cent alcohol had been extracted when there was alcohol on defendant's skin, then the effect of the alcohol on the outside of the arm would be to increase the reading by .016 per cent, which could be subtracted from .155 per cent, leaving .139 per cent. If four hours of oxidation of alcohol were added to the reading of .139 (the time which elapsed between the accident and the blood test), the reading would be .199 per cent blood alcohol, and in the opinion of the witness, a person with .199 per cent blood alcohol would be under the influence of intoxicating liquor.

The law respecting evidence of experiments is uniform. They must have been made under substantially the same conditions as those existing when the alleged occurrence took place. The conditions need not be identical but must be so nearly so as to render the experiment reliable and free from uncertainty. ■ If the conditions of the experiment are not shown to have been the same as those of the occurrence to an extent that would insure substantially the same results as those of the occurrence, the evidence is inadmissible. (*People* v. *Wagner*, 29 Cal.App. 363 [155 P. 649]; *People* v. *Woon Tuck Wo*, 120 Cal. 294 [52 P. 833]; 18 Cal.Jur.2d 678.)

■ The burden, of course, was upon the People to show substantially identical conditions of the experiment. (*McGough* v. *Hendrickson*, 58 Cal.App.2d 60, 68 [136 P.2d 110].)

■ We do not believe, however, that defendant's objection to the evidence was sufficient to preserve the point on appeal. It was merely a general objection that the foundation laid for the evidence was insufficient. It is now argued that the needle used by Dr. Holtzhauer may have been larger than the one used by Dr. Myers and that a needle with a large opening would "scoop up" more alcohol than one with a small opening; it is also argued that Dr. Holtzhauer may have used pure alcohol in extracting the sample she took and Dr. Myers may have used a weak solution. Neither Dr. Holtzhauer nor Dr. Myers was questioned as to these details. There was nothing in the evidence to indicate that the blood samples were taken under different conditions. The argument is that in the mentioned particulars they may have been different; but it is not questioned that they may have been the same. We will agree that the People should have been meticulous in

laying the foundation for evidence of the experiment. Nothing should have been left to conjecture. Identity of the conditions of the experiment with those of the occurrence should have been shown as fully as it was possible to prove them. It may be that if defendant had specified the particulars in which she now claims the foundation was incomplete the court would have sustained her objection. If it would have been a good objection, it is to be presumed that the court would have sustained it. And if it had been sustained it would have been a simple matter to go into the question of the identity of the conditions of the two extractions of blood. If the needles and the strength of the disinfectants used had been shown to be so nearly the same as to give substantially the same results, evidence of the experiment would have been admissible. If, perchance, the conditions appeared to the court to be so different as to render evidence of the results of the experiment unreliable or deceptive, the objection, no doubt, would have been sustained.

We need not inquire whether there was such a defect in the foundation for the evidence as would have made it the duty of the court to sustain a sufficient objection. The court was not given an opportunity to pass upon such an objection. It was not the duty of the court or the district attorney to divine the reasons for the objection which defense counsel had in mind. They should have been stated. Error must be predicated upon rulings which the court makes respecting the merits of objections to the admission of evidence.  It cannot be predicated upon the overruling of objections when the particular grounds of the objection are not stated, unless they are obvious, or otherwise known to the court.

 In 1858 Mr. Justice Field wrote in *Kiler* v. *Kimbal,* 10 Cal. 267: ''To entitle an objection to notice, it must not only be on a material matter, affecting the substantial rights of the parties, but its point must be particularly stated. This is not only a statutory regulation, but it is the uniform rule, so far as we are aware, of all Courts of Record. The party, as the authorities say, must lay his finger on the point of his objection to the admission or exclusion of evidence.'' This is still good law. In 1943 Mr. Justice White wrote in *People* v. *Tolmachoff,* 58 Cal.App.2d 815, 826 [138 P.2d 61]: ''Where an objection to evidence is made, as was the case here, in general terms, and where the objection could have been cured by the party offering the testimony if the reason for which it was objected to had been given in the trial court, it is the

general rule that an appellate tribunal will not consider such objections to the admission of evidence when the precise ground of objection was not clearly or at all specified in the trial court. Where, as here, the proffered evidence is allegedly imperfect because of the lack of preliminary proof, which might or might not have been supplied by the party offering such evidence, the objection must be specific and it must point out the alleged defect. If this is not done, the objection cannot be urged on appeal. (*People* v. *Owens,* 123 Cal. 482, 490 [56 P. 251]; *People* v. *Wright,* 26 Cal.App.2d 197, 207 [79 P.2d 102]; 8 Cal.Jur. pp. 503, 504.)''

The rule holds good as to all latent grounds of objection which are not called to the attention of the court. It is directly applicable here. We are asked to reverse a judgment, otherwise sound, upon the mere chance that further inquiry would have disclosed that alcohol much greater in quantity or strength was introduced into the sample taken by Dr. Holtzhauer than in the one taken by Dr. Myers. But error, without a showing of prejudice, does not warrant reversal of a judgment.

There is an obvious difference between the receipt of evidence of an experiment made under conditions materially different from those of the occurrence sought to be illustrated and the present case, in which the conditions might have been substantially the same. In the former there is a factual basis upon which to rest a claim of prejudice; in the present case there is none. Any question as to the reliability of the experiment could have been answered readily in the trial court. Upon the appeal unreliability can be urged only as a remote possibility. We can only conclude that appellant's failure to register a sufficient objection amounted to a waiver of the right to claim error in the admission of the evidence.

During the *voir dire* examination of prospective jurors, defense counsel asked the question set out in the margin.[2] An objection of the People was sustained and the ruling is assigned as error. In sustaining the objection the

---

[2] ''Mrs. Silverman, in this case much of the evidence will be circumstantial evidence. I believe the Court will instruct you that circumstantial evidence may be received and considered as all other evidence. But where there are two reasonable interpretations of the evidence, that is after you have heard all of the evidence, one of which points to the defendant's guilt and the other of which points to the defendant's innocence, that it is your duty to reject that which points to the defendant's guilt and accept that which admits of her innocence. Do you have any prejudice against such an instruction?''

court stated to counsel that he would be permitted to ask the jurors whether they would follow the instructions of the court even though they might not agree with them and whether they would put aside their own thoughts as to what the law might be and accept the court's ruling as to what the law is. Counsel was not satisfied with this ruling. He announced his intention of stating to each juror the substance of each instruction which he believed the court would give and to inquire of each juror whether he or she would follow the same. He carried his instructions to the bench and said "I am bringing these instructions with me to the bench only for the purpose of making a record." Counsel then identified by number numerous instructions as to which he proposed to question the jurors and the court ruled that objections to questions relating thereto would be sustained. There was no error. The court should not have permitted the type of interrogation which counsel proposed to make. In fact, the court could have drastically limited the questioning of the jurors. The *voir dire* examination comprises more than 150 pages of the reporter's transcript. Numerous of the questions asked by defense counsel cover one and one-half pages of closely written typing. The questioning on both sides was replete with expatiation and digression. The court was liberal in permitting the extensive interrogation of the jurors. The examination of those who were finally selected on the panel was eminently fair and adequate to furnish counsel full information as to the convictions and fair-mindedness of the jurors and of their willingness if they were on trial to rest their fates with jurors of the same frame of mind as they, themselves, were. We need not say more on this point. The course of interrogation intended to be pursued was not one which the court was required to permit. It, therefore, properly forestalled the proposed lengthy examination of the jurors by ruling against it in its preliminary stages.

There are no other assignments of error.

The judgment and order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.