[Crim. No. 6194. In Bank. Oct. 28, 1958.]

THE PEOPLE, Respondent, v. JACK HYDE, Appellant.

Albert Simon, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, Albert Bianchi and Elizabeth Miller, Deputy Attorneys General, for Respondent.

THE COURT.—Defendant was charged with burglary in Count I and with receiving stolen property in Count II. He pleaded not guilty to both counts but admitted two prior convictions of robbery in California in 1947 and 1952. The jury found him guilty of receiving stolen goods and acquitted him on the burglary count. His motions for a new trial and for probation were denied. He appeals from the judgment sentencing him to the state prison for the term prescribed by law and from the order denying his motion for a new trial.

The public defender represented defendant at the trial but

did not undertake the prosecution of his appeal. (See Gov. Code, § 27706.) Defendant requested the District Court of Appeal, Second District, Division Three, in which the appeal was pending, to appoint an attorney to represent him, claiming that he was without funds to employ counsel. That court referred the request to the Los Angeles Bar Association Committee on Criminal Appeals, which in turn referred the matter to one of its attorney members. This attorney made a written report to the court setting forth that he had examined the record and that in his opinion it disclosed no meritorious ground of appeal. The court so advised the defendant and extended his time to file a brief. Defendant prepared and filed a brief in propria persona. The District Court of Appeal made an independent examination of the record and affirmed the judgment. ((Cal.App.) 317 P.2d 73.)

This court ordered a hearing on its own motion in this case to consider the question of the appointment of counsel on appeal for an indigent defendant who has been convicted of a crime.

■ It is our opinion that appellate courts, upon application of an indigent defendant who has been convicted of a crime, should either (1) appoint an attorney to represent him on appeal or (2) make an independent investigation of the record and determine whether it would be of advantage to the defendant or helpful to the appellate court to have counsel appointed. This investigation should be made solely by the justices of the appellate courts. After such investigation, appellate courts should appoint counsel if in their opinion it would be helpful to the defendant or the court, and should deny the appointment of counsel only if in their judgment such appointment would be of no value to either the defendant or the court.

After a hearing was ordered by this court in this case, counsel was appointed for defendant and briefs were submitted. At the trial Officers Johnson and Atkisson testified that they were in a patrol car at about 11 p. m. on August 16, 1956. They observed two cars, one closely following the other, force a pedestrian in a crosswalk to stop to avoid being hit. The officers followed the two cars and signalled defendant to the side of the road. Officer Johnson stepped out of the patrol car, and Officer Atkisson pursued the other car. Defendant stepped out of his car leaving the door open. Officer Johnson flashed his light into the back seat of the car and saw six gunny sacks and a camera protruding from one of the

sacks. He asked defendant, "What do you have in the gunny sack?" Defendant replied that he was moving and that the sacks contained personal belongings. Officer Johnson then stated that they looked like cameras and defendant said that they were cameras, that he was a camera salesman. Officer Johnson then stated that it seemed very odd that a man in the camera business would be carrying cameras around in a gunny sack in the back end of his car. Defendant replied, "Well, there is no use in talking about it here." Then Officer Johnson told defendant that he thought he was a burglar because a few nights ago a Hollywood camera store had been burglarized and $20,000 worth of camera equipment had been taken. Officer Johnson then placed defendant under arrest on a charge of burglary.

Officer Johnson called to Officer Atkisson that he thought he had a burglar. Both officers flashed their lights through the window on the six gunny sacks. Officer Atkisson asked defendant, "What are you doing with these articles in your car?" Defendant replied, "I have nothing to say. Take me to the station." Defendant and his car were then taken to the police station. Enroute Officer Johnson asked defendant where he had obtained the cameras. Defendant replied, "A fellow had given them to me." When Officer Johnson asked "Who?", defendant said, "Well, I would be a raving idiot to tell you who. I don't want to talk to you. I want to talk to someone higher up who could do something good." At the station the camera equipment was examined and listed by serial number and description. Officer Johnson identified a Revere stereo camera, a Reflecta camera, and a Dittar camera as part of the contents of the gunny sacks taken from defendant's car.

David Kaner testified that he owned a camera shop in Hollywood and that it was locked at the close of business on August 10, 1956. When he arrived at his store on the morning of August 11, 1956, he found that a hole had been broken through the wall near the rear of the store and camera equipment valued at $13,500 had been taken. He identified the Revere, Reflecta and Dittar cameras as part of the equipment taken from his store. The three cameras were admitted into evidence without objection.

Officer Northrup testified that he questioned defendant at the station regarding the cameras and the burglary and that defendant replied: "I cannot tell you anything about the

burglary except that I did not pull it. All I was doing was delivering that stuff for somebody else. I was going to get a couple bills for my end of it. I cannot tell you who I picked it up from or who I was going to deliver it to."

Joe Larios testified on behalf of the defendant. He stated that he asked defendant to deliver some gunny sacks and that defendant was to receive $10. In the evening on August 16, 1956, defendant parked his car next to the hotel where Larios was staying. Larios loaded the gunny sacks while defendant got a pack of cigarettes. Larios was loading the last two sacks when defendant returned. Defendant asked him what was in the sacks, and Larios replied that they contained cameras. Larios instructed the defendant to deliver the cameras to a Red Cole at a certain bar. Larios testified that he had obtained the camera equipment about three days before from a Tom McGowan. Larios knew the cameras were stolen but he did not disclose this fact to defendant.

Defendant's testimony was similar to that of Larios, including the fact that he was to receive $10 for the delivery. He also testified that he was unable to locate Red Cole at the bar and was later stopped by the officers. He denied that he said the gunny sacks contained personal belongings or that he was a salesman. He also denied that he told Officer Northrup that he was to receive "two bills" for making the delivery. He admitted that "two bills" meant $200. He testified that Larios had a typewriter shop.

Defendant contends that the evidence is insufficient to establish knowledge that the cameras were stolen. Such knowledge, however, may be inferred from defendant's false and evasive replies concerning the cameras to Officers Johnson and Atkisson, and from the circumstances that Larios was not a camera dealer, that the equipment was transported in gunny sacks, that the equipment was not to be delivered to a camera dealer but to some one called "Red" at a bar, and that defendant said he was to receive "two bills" for his end of it. (*People* v. *Malouf*, 135 Cal.App.2d 697, 706-707 [287 P.2d 834] ; *People* v. *Boyden*, 116 Cal.App.2d 278, 288 [253 P.2d 773] ; *People* v. *Juehling*, 10 Cal.App.2d 527, 531 [52 P.2d 520].) The weight to be given defendant's and Larios' testimony was a matter for the jury, and it was not bound to believe Larios' testimony that he did not tell defendant that the cameras were stolen. (*People* v. *Gould*, 111 Cal.App.2d 1, 6 [243 P.2d 809] ; *People* v. *Toliver*, 90 Cal.App.2d 58, 61

[202 P.2d 301].) The evidence is therefore sufficient to support a finding that defendant knew that the cameras were stolen.

■ Defendant contends that the cameras were acquired by an illegal search and seizure and were improperly admitted into evidence. Defendant was represented by counsel during the trial and no objection was made to the admission of the cameras into evidence. Failure to object to the introduction of the evidence at the trial on the ground that it was acquired by an unlawful search precludes raising the issue on appeal, where, as here, the trial occurred after the decision in *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]. (*People* v. *Kitchens*, 46 Cal.2d 260, 262-263 [294 P.2d 17] ; *People* v. *Williams*, 148 Cal.App.2d 525, 532 [307 P.2d 48] ; *People* v. *Shannon*, 147 Cal.App.2d 300, 303 [305 P.2d 101].)

■ In any event, observing the items through the open car door and through the window did not constitute an unreasonable search. (*People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855].) Thereafter the cameras were properly seized as an incident to a lawful arrest. (*People* v. *Boyles*, 45 Cal.2d 652, 655 [290 P.2d 535] ; *People* v. *Coleman*, 134 Cal.App.2d 594, 599 [286 P.2d 582].) ■ Defendant's contention that the arrest was for a minor traffic violation unrelated to the search and seizure of the cameras is not supported in the record, for it shows that the defendant was arrested on a charge of burglary. The arrest on that charge was justified by the evidence that Officer Johnson saw one of the cameras protruding from one of the sacks, that defendant admitted they were cameras, that Officer Johnson knew of the recent burglary of a camera store, that the cameras were in gunny sacks, and that defendant gave false and evasive answers to Officer Johnson concerning the cameras. ■ The cameras were therefore properly admitted into evidence.

■ In his brief in propria persona, filed before the appointment of counsel, defendant contends that the testimony of the officers cannot support a conviction on the ground that it is uncorroborated, citing *People* v. *Reingold*, 87 Cal.App.2d 382, 392 [197 P.2d 175]. That case was concerned with corroboration of testimony by an accomplice as required by section 1111 of the Penal Code. The officers were not accomplices of the defendant and their testimony need not be corroborated.

■ Defendant also contends in his brief in propria persona that he was denied due process of law by virtue of beat-

ings administered by the police. There is no merit in this contention. The officers denied beating defendant. Moreover, defendant does not contend that he was coerced to make any confession or admission, and in fact he testified that he made no confession or admission as a result of the alleged police brutality.

The judgment and order are affirmed.

Schauer, J., concurred in the judgment.

Spence, J., did not participate herein.