[Crim. No. 6826. In Bank. July 24, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD ARLEN LINDSEY, Defendant and Appellant.

Paul Major, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Plaintiff and Respondent.

GIBSON, C. J.—Defendant pleaded guilty to murder in the first degree, and, upon a trial on the sole issue of penalty, the court sitting without a jury fixed the punishment at death.[1] The appeal comes to us automatically under subdivision (b) of section 1239 of the Penal Code.

According to the confession defendant made to the police and his testimony at the trial, the circumstances surrounding the murder were as follows: While defendant was driving in Kern County on the afternoon of January 12, 1961, with his wife, who was in her seventh month of pregnancy, he told her he wanted a little girl for sexual purposes. They went to the Shafter Labor Camp where his wife talked to some children about cleaning her home, and a small boy went to a nearby house and brought back Rose Marie Riddle, who was about 6 years old. Rose Marie got into the front seat of the car with defendant and his wife, and after traveling some distance they stopped at the side of the road, where defendant and his wife drank some whiskey. When the girl said she wanted to go home and started to cry, defendant's wife slapped her. The girl continued to cry, and defendant's wife said to him that somebody would hear her and that they "might as well get it over with." Defendant turned off the highway onto a dirt road and drove about two or three hundred yards, where his wife removed Rose Marie's panties and got into the back seat. Defendant assaulted Rose Marie and choked her, and when his wife said, "I guess she's dead," he carried the girl out of the car and put her on the ground. Defendant's wife said that she thought she heard something, that the girl was not dead, and that she would kill her. She took a pipe wrench from the car and struck her on the head several times. They left her on the ground and drove away.

A doctor who performed an autopsy found several bruises about the genitalia, neck, shoulders, and buttocks, numerous contusions and lacerations about the head, and spermatozoa within the vaginal orifice. He also found injuries to the brain and a tear of the vaginal fornix opening into the abdominal cavity. He testified that in his opinion the most probable cause of death was "cranial cerebral" injuries but that death might have been produced by strangulation or by the initial shock from the genital injury and that it was highly probable

[1] Defendant also pleaded guilty to kidnaping, in violation of section 207 of the Penal Code, and for that offense he was sentenced to imprisonment for the term prescribed by law.

that the genital injury would have eventually proved fatal due to infection in the abdominal cavity.

There was evidence that defendant was 30 years of age and that he had served terms of imprisonment for auto theft, had been in jails 20 or 30 times and had been married six times. He would sometimes ''go into a mad tantrum,'' and on some of these occasions he made violent physical attacks on other persons. In 1956 he was in an automobile accident and suffered very serious head injuries, and subsequently, at the request of his parents, he was twice committed to a hospital in Texas for about 50 days. The diagnosis made at the hospital was that there were no signs of psychoses and that he was a sociopathic personality, a type of person who cannot get along in society and is unable to conform to the rules of society. A psychiatrist who testified for the prosecution and one appearing as a witness for the defense agreed with the diagnosis made at the Texas hospital, and they stated that in their opinion defendant was ''legally sane'' both at the time of the trial and at the time of the killing.

■ Section 1368 of the Penal Code provides, ''If at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, if a trial by jury is demanded. . . .'' In support of the claim that there should have been a hearing under this section, our attention is called to the evidence of his confinement in the hospital in Texas, his fits of violence, his head injury, and the circumstances surrounding the kidnaping and the killing of Rose Marie. However, as we have seen, both the psychiatrist who testified for the defense and the one testifying for the prosecution were of the opinion that there were no signs of psychoses and that defendant was ''legally sane.'' While his testimony was somewhat vague at times, being qualified by such expressions as ''I guess,'' this does not compel the conclusion that he suffered from a serious impairment of memory. His account of what occurred was coherent, and large portions of it were unqualified by any expression indicating uncertainty. The judge had ample opportunity to observe defendant, and at the beginning of the trial he stated to counsel that should any question arise in his mind as to defendant's sanity he would order a special hearing on the issue. He was thus alert to the problem, and in the light of the record there

was no abuse of discretion in not ordering a hearing on the question of sanity.

■■ There is no merit in the assertion that, in view of the evidence regarding defendant's mental condition, the court was required to impose a penalty of life imprisonment rather than death. The trial judge had absolute discretion to select the penalty to be imposed and was not required to make the determination on the basis of mitigating or aggravating circumstances. (*People* v. *Rittger,* 54 Cal.2d 720, 734 [355 P.2d 645] ; *People* v. *Feldkamp,* 51 Cal.2d 237, 241 [331 P.2d 632].)

■■ A motion picture and photographs showing the body of the victim were admitted into evidence. It is contended that the probative value of this evidence was outweighed by the danger of prejudice to defendant. (See *People* v. *Chavez,* 50 Cal.2d 778, 792 [329 P.2d 907].) The photographs and the motion picture tended to clarify and corroborate the testimony of the autopsy surgeon with respect to the location and character of the victim's wounds. The materiality of the evidence is clear, and, although the pictures were not pleasant to look at, it does not appear that the probative value of the evidence was outweighed by the danger of prejudice. (*Cf. People* v. *Brubaker,* 53 Cal.2d 37, 48 [346 P.2d 8] ; *People* v. *Atchley,* 53 Cal.2d 160, 168 [346 P.2d 764].) Moreover, the case was tried by the court sitting without a jury, and a judge is much less likely than a jury to be improperly influenced by such evidence, since his trained legal mind will view the evidence in its proper light and for the limited purpose for which it was introduced. (*People* v. *Robillard,* 55 Cal.2d 88, 99 [10 Cal.Rptr. 167, 358 P.2d 295], *cf. People* v. *Jones,* 52 Cal. 2d 636, 654 [343 P.2d 577].) Under the circumstances we cannot say that the photographs and the motion picture were erroneously admitted.

■■ Finally it is argued that the attorney who represented defendant at the trial was incompetent and that as a result defendant was deprived of the effective aid of counsel. For example, it is claimed that the attorney should not have permitted defendant to plead guilty to first degree murder and should have advised him to enter a plea of not guilty by reason of insanity. The evidence of defendant's guilt was overwhelming, and the record shows that he desired to plead guilty. The attorney knew at the time of arraignment that the psychiatrist who examined defendant on behalf of the prosecution was of the opinion that he was sane when the

offense was committed. This opinion was concurred in by the psychiatrist called as a witness for the defense. The best course to be followed in entering a plea was obviously a matter demanding exercise of judgment on the part of the attorney, and under the circumstances it cannot be said that there was incompetence in that regard. The other instances relied on in support of the claim that the trial attorney was incompetent are completely lacking in merit.

The judgment is affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied August 23, 1961.